UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

JOHN FRANCIS LECHNER,

           Plaintiff,                     Case No. 2:15-cv-5

v.                                  Honorable Robert Holmes Bell

COUNTY OF MARQUETTE, et al.,

           Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff John Francis Lechner filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Marquette County, Marquette County Board of Commissioners, Chairman Gerald O. Corkin, Vice Chair Bobbie Pelow, Steve Pence, Paul Arsenault, Bruce Heikkila, Greg Seppanen, Marquette County Administrator Scott Erbisch, Marquette County Sheriff's Department, Marquette County Sheriff Michael H. Lovelace, Marquette County Undersheriff Jack Schneider, Unknown Corrections Officers, and the United States Marshal Service.

In his complaint, Plaintiff alleges that he was arrested on federal charges on September 21, 2011.  While Plaintiff was being held at the Marquette County Jail, prison officials interfered with his mail.  Plaintiff states that on October 23, 2011, Plaintiff was denied delivery of a piece of mail sent by Lisa Honeycutt.  Plaintiff only discovered this denial on July 17, 2012, when he was transferred to the Chippewa County Jail and it was discovered by officials as his property was being processed.  On October 24, 2011, Plaintiff's attorney, Charles W. Malette, mailed an envelope containing Alcohol, Tobacco and Firearms (ATF) rules to Plaintiff, along with a description of the planned trial strategy.   Plaintiff states that this envelope was never delivered to him and the whereabouts continue to be unknown.  Plaintiff asserts that he suffered harm as a result because he was less able to assist his attorney in his own defense.

On November 4, 2011, Audrey Plastino mailed Plaintiff an envelope containing ATF rules to aid in his defense.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  On November 21, 2011, Attorney Malette mailed Plaintiff legal documents describing planned trial strategy.  Plaintiff never received this mail.  On December 26, 2011, personal mail sent to Plaintiff by the Dooley family on December 22, 2011, was withheld

from Plaintiff.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  On January 2, 2012, attorney Mallette mailed Plaintiff a large envelope containing mail describing federal law, anticipated trial strategy, and a "plethora" of viable defenses to be presented at Plaintiff's trial.  Plaintiff never received this envelope.  On January 25, 2012, Audrey Plastino sent Plaintiff an envelope containing personal correspondence, but Marquette County Jail employees did not deliver it to Plaintiff and he did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  On February 4, 2012, Ken Lechner mailed Plaintiff correspondence, but Marquette County Jail personnel did not deliver it to Plaintiff.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.

On March 5, 2012, Ken Lechner sent Plaintiff correspondence which included possible trial strategy based on various experts in criminal law.  Marquette County Jail personnel did not deliver this correspondence to Plaintiff.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  On March 12, 2012, Ken Lechner sent Plaintiff an envelope which contained a check for $200.00.  Marquette County Jail personnel did not deliver this envelope to Plaintiff.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  On May 7, 2012, Ken Lechner sent Plaintiff an envelope containing personal correspondence and stock quotes.  Marquette County Jail personnel did not deliver this correspondence to Plaintiff.  Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.

On May 25, 2012, Ken Lechner sent Plaintiff an envelope containing correspondence and $15.00 in cash.  Marquette County Jail personnel did not deliver this correspondence to Plaintiff.

Plaintiff did not discover this mail until he was transferred to the Chippewa County Jail on July 17, 2012.  In addition, when Plaintiff received the envelope, only $10.00 in cash remained.

Plaintiff states that the interference with his mail violated his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, as well as under state law.  Plaintiff seeks compensatory, punitive and exemplary damages, as well as equitable relief.

**Discussion**

        I.         <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

- 4 -

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants Marquette County, Marquette County Board of Commissioners, Chairman Gerald O. Corkin, Vice Chair Bobbie Pelow, Steve Pence, Paul Arsenault, Bruce Heikkila, Greg Seppanen, Marquette County Administrator Scott Erbisch, Marquette County Sheriff's Department, Marquette County Sheriff Michael H. Lovelace, and Marquette County Undersheriff Jack Schneider are liable for Plaintiff's injuries because they failed to adequately train and supervise the deputies. These Defendants cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or

otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp.

335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Marquette County,

Marquette County Board of Commissioners, Chairman Gerald O. Corkin, Vice Chair Bobbie Pelow,

Steve Pence, Paul Arsenault, Bruce Heikkila, Greg Seppanen, Marquette County Administrator Scott

Erbisch, Marquette County Sheriff's Department, Marquette County Sheriff Michael H. Lovelace,

Marquette County Undersheriff Jack Schneider were personally involved in the activity which forms

the basis of his claim.  The only roles that Defendants Marquette County, Marquette County Board

of Commissioners, Chairman Gerald O. Corkin, Vice Chair Bobbie Pelow, Steve Pence, Paul

Arsenault, Bruce Heikkila, Greg Seppanen, Marquette County Administrator Scott Erbisch,

Marquette County Sheriff's Department, Marquette County Sheriff Michael H. Lovelace, Marquette

County Undersheriff Jack Schneider had in this action involve the denial of administrative

grievances or the failure to act.  Accordingly, the Court concludes that Plaintiff's claims against

Defendants Marquette County, Marquette County Board of Commissioners, Chairman Gerald O.

Corkin, Vice Chair Bobbie Pelow, Steve Pence, Paul Arsenault, Bruce Heikkila, Greg Seppanen,

Marquette County Administrator Scott Erbisch, Marquette County Sheriff's Department, Marquette

County Sheriff Michael H. Lovelace, Marquette County Undersheriff Jack Schneider are properly

dismissed for lack of personal involvement.

With regard to Plaintiff's claims against the United States Marshal Service, the

allegations set forth by Plaintiff in his complaint fail to show any wrongdoing on the part of the

Marshal Service.  Moreover, as noted by Defendant Marshal Service in their motion to dismiss, *see*

docket #12, Plaintiff may not maintain an action for alleged constitutional violations against a federal

agency.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).  Therefore, Plaintiff's claims against

Defendant Marshal Service are properly dismissed.

        With regard to Plaintiff's claims against Unknown Corrections Officers, these claims

are properly dismissed because Plaintiff has failed to show that his constitutional rights were

violated.  Plaintiff makes a conclusory statement that Defendants' actions violated his rights under

the Fifth Amendment.  The Double Jeopardy Clause of the Fifth Amendment precludes successive

state proceedings that are essentially criminal in nature.  *Breed v. Jones*, 421 U.S. 519, 527-528

(1974).  In *Breed*, the Court noted that criminal proceedings impose heavy pressures and burdens

on a person charged.  *Id.* at 529-530.  The purpose of the Double Jeopardy Clause is to ensure that

a person not be subject to such a proceeding more than once for the same offense.  *Id.* at 530.

        The Fifth Amendment also protects a person's right against self-incrimination.

*Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975).  A prisoner may remain silent when charged with

a prison rule infraction, but his silence during a prison disciplinary hearing may be weighed against

him in determining his guilt.  *Id.* at 316-319.  Plaintiff in this case failed to allege any facts which

would implicate his rights under the Fifth Amendment.  Therefore, Plaintiff's Fifth Amendment

claim should be dismissed as frivolous.

        Plaintiff also claims that his Sixth Amendment rights were violated.  The Sixth

Amendment protects a person's right to counsel in all criminal proceedings.  U.S. CONST. Amend.

VI.  Plaintiff fails to allege that his right to counsel was violated.  Therefore, his Sixth Amendment

claims are properly dismissed.

        Plaintiff contends that his Eighth Amendment rights were violated.  The Eighth

Amendment imposes a constitutional limitation on the power of the states to punish those convicted

of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The Court concludes that Plaintiff's allegations fail to rise to the level of an Eighth Amendment claim.

Plaintiff claims that the interference with his mail violated his First Amendment right of access to the courts.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the

State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

In this case, Plaintiff was represented by an attorney in his criminal trial.  The fact that Plaintiff failed to receive some documents from his attorney which related to his defense at trial is not sufficient to deprive him of his right of access to the courts.  Moreover, Plaintiff's claim that he

was prejudiced at trial by his failure to received certain documents appears nonsensical given the fact

that Plaintiff pleaded guilty prior to any trial being conducted.  *See USA v. John Francis Lechner*,

Case No. 2:11-cr-49, docket #33.  Therefore, Plaintiff's access to courts claim is properly denied.

Plaintiff also appears to be claiming that his right to free association was violated.

The court notes that the Sixth Circuit has not decided the degree to which prison inmates retain their

freedom of association.  *Long v. Norris*, 929 F.2d 1111, 1118 (6th Cir.), *cert. denied*, 502 U.S. 863

(1991).  However, other courts have held that an inmate's right to mail letters to his family or friends

is not absolute, and that a prisoner has no more right to free postal service than does the ordinary

citizen.  *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972); *Williams v. Ward*, 404 F. Supp. 170,

172 (S.D. N.Y. 1975); *Chiarello v. Bohlinger*, 391 F. Supp. 1153, 1154 (S.D. N.Y. 1975), *aff'd*, 573

F.2d 1288 (1978).  In addition, a court in the Eastern District of Michigan recently held that "no right

of freedom of association exists for prisoners."  *Bazzetta v. McGinnis*, 902 F. Supp. 765, 770 (E.D.

Mich. 1995), *aff'd*, 124 F.3d 774 (6th Cir. 1997), *supp. by*, 133 F.3d 382 (6th Cir. 1998), *cert.

denied*, 524 U.S. 953 (1998).  The court concludes that any limited right of freedom of association

Plaintiff might retain while incarcerated was not violated by the alleged interference with Plaintiff's

mail.

Plaintiff claims that his due process rights were violated by Corrections Officers when

they interfered with his mail.  Plaintiff's due process claim is barred by the doctrine of *Parratt v.

Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under

*Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has

no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.

If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due

process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional

deprivation of property, as long as the deprivation was not done pursuant to an established state

procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is

premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy

of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995);

*Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a

prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See*

*Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Plaintiff has not sustained his burden in this case.

Plaintiff has not alleged that state post-deprivation remedies are inadequate. Therefore, this claim

is properly dismissed.

To the extent that Plaintiff is claiming his state law rights were violated, the Court

refuses to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best

left to determination by the state courts, particularly in the area of prison administration. In addition,

pendent jurisdiction over state law claims cannot be exercised after all federal claims have been

dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966);

*Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954

F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found
> to exist. It has consistently been recognized that pendent jurisdiction
> is a doctrine of discretion, not of plaintiff's right. Its justification lies
> in considerations of judicial economy, convenience and fairness to
> litigants; if these are not present a federal court should hesitate to
> exercise jurisdiction over state claims, even though bound to apply
> state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct.
> 817, 82 L. Ed. 1188. Needless decisions of state law should be
> avoided both as a matter of comity and to promote justice between

the parties, by procuring for   them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.  Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the  comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: <u>April 30, 2015</u>                         /s/ Robert Holmes Bell
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE